**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **JEROME MCGREW,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MEDTRONIC, INC.,**<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**PROPOSED CLASS ACTION** |

Plaintiff Jerome McGrew, individually and on behalf of the Class defined below of similarly situated persons ("Plaintiff and Class Members"), alleges the following against Defendant Medtronic, Inc., ("Defendant" or "Medtronic"). The following allegations are based on Plaintiff's knowledge, investigations by Plaintiff's counsel, facts of public record, and information and belief:

## NATURE OF THE ACTION

1.      Plaintiff seeks to hold Defendant responsible for the injuries Medtronic inflicted on Plaintiff and over 9 million others due to Defendant's egregiously inadequate data security, which resulted in the private information of Plaintiff and those similarly situated to be exposed to unauthorized third parties (the "Data Breach").

2.      Medtronic manufactures a range of medical products, including pacemakers, defibrillators, heart valves, coronary stents, insulin pumps, continuous glucose monitoring systems, neurosurgery products and imaging systems, surgical robotics, ventilators, and

1

gastrointestinal products. The company is the world's largest medical device company by revenue, which was $33.5 billion in fiscal year 2025. The company operates in more than 150 countries, employs around 95,000 people worldwide, and serves around 79 million patients annually.

3.    The data Medtronic exposed to the public is unique and highly sensitive. For one, according to the prominent hacking group ShinyHunters that, upon information and belief, gained access to Medtronic's systems and exfiltrated it, the exposed data included personal identifying information ("PII") which typically includes full names, Social Security numbers, policy numbers, dates of birth, mailing addresses, phone numbers, and email addresses (collectively, "Private Information").

4.    Plaintiff and Class Members provided this information to Medtronic with the understanding Medtronic would keep that information private in accordance with both state and federal laws.

5.    ShinyHunters claimed to have stolen more than 9 million records containing Personal Information, although Medtronic has not elaborated on ShinyHunters' claim. Bolstering the veracity of the entry and exfiltration of the Private Information, ShinyHunters said it would publish the stolen data if the ransom was not paid by April 21, 2026. The amount of money demanded has not been made public.

6.    Medtronic disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard Private Information and by failing to take necessary steps to prevent

unauthorized disclosure of that information. Medtronic's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7.     Exacerbating the injuries to Plaintiff and Class Members, Medtronic failed to provide timely notice to Plaintiff and Class Members, depriving them of the chance to take speedy measures to protect themselves and mitigate harm.

8.     Today, the Private Information of Plaintiff and Class Members continues to be in jeopardy because of Defendant's actions and inactions described herein. Plaintiff and Class Members now suffer from a heightened and imminent risk of fraud and identity theft for years to come and now must constantly monitor their medical and financial accounts for unauthorized activity.

9.     The Private Information exposed in the Data Breach can enable criminals to commit a litany of crimes. Criminals can open new financial accounts in Class Members' names, take out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' information to craft phishing and other hacking attacks based on Class Members' individual health needs, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

10.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present,

3

certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) anxiety, annoyance, and nuisance; (k) continued risk to their Private Information, which remains in Medtronic's possession and is subject to further breaches so long as Medtronic fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information; and (l) disgorgement damages associated with Medtronic's maintenance and use of Plaintiff's data for its benefit and profit.

11.     Through this action, Plaintiff seeks to remedy these injuries on behalf of himself and all similarly situated individuals whose Private Information was exposed and compromised in the Data Breach.

12.     Plaintiff brings this action against Medtronic and asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory and injunctive relief.

## PARTIES

13.     Plaintiff Jerome McGrew is a natural person, resident, and citizen of Minnesota.

14. Defendant Medtronic, Inc., is a medical device manufacturing company with its principal place of business located at 710 Medtronic Parkway, Minneapolis, MN 55432.

## JURISDICTION AND VENUE

15. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant.

16. Supplemental jurisdiction to adjudicate issues pursuant to state law is proper in this Court under 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over Defendant because Defendant's principal place of business and headquarters are in Minnesota. Defendant also regularly conducts substantial business in Minnesota.

18. Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## FACTUAL ALLEGATIONS

***Defendant Collected and Stored the Private Information of Plaintiff and Class Members***

19. Medtronic describes itself as a pioneer in "groundbreaking health tech."

20. Plaintiff and Class Members provided their Private Information to Medtronic as a requirement to obtain medical device products and services from Defendant.

21.    Medtronic collects Private Information from Plaintiff and Class Members such as their full names, Social Security numbers, policy numbers, dates of birth, mailing addresses, phone numbers, and email addresses in the ordinary course of business.[1] Upon information and belief, this Private Information is then stored on Defendant's systems.

22.    Because of the highly sensitive and personal nature of the information Medtronic acquires and stores, Medtronic knew or reasonably should have known that it must comply with industry standards related to data security and all federal and state laws protecting Private Information and provide adequate notice if Private Information is disclosed without proper authorization.

23.    Plaintiff and Class Members provided their Private Information to Medtronic as a condition of receiving or providing Medtronic's products and services, but in doing so, expected Medtronic to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

24.    On April 24, 2026, Medtronic released a statement on unauthorized system access, reporting that the Data Breach occurred.  The statement provides no information regarding who was affected, what information was taken, or when it was taken.

---

[1] *See, e.g.*, Medtronic, *Manage Your ID Card: Patient Device Registration*, available at: https://www.medtronic.com/en-us/l/patients/update-device-registration.html

25. On April 28, 2026, The HIPAA Journal reported that the ShinyHunters data theft and extortion group claimed responsibility for the attack. The group claimed to have exfiltrated terabytes of Medtronic data, including personally identifiable information.

26. Upon information and belief, the ShinyHunters cybercriminal group is the threat actor that perpetrated the Data Breach targeting Medtronic.[2]

27. ShinyHunters claimed to have stolen more than 9 million records containing Personal Information, although that claim has not been verified by Medtronic. ShinyHunters said it would publish the stolen data if the ransom was not paid by April 21, 2026.

28. Upon information and belief, Plaintiff's and Class Members' affected Private Information at the time of the Data Breach was accessible, unencrypted, demonstrably unprotected, and vulnerable for acquisition and/or exfiltration by unauthorized individuals.

29. Medtronic's public disclosures about the Data Breach offer no details to Plaintiff or Class Members regarding the manner and means of how their Private Information was disclosed and leaves Plaintiff and Class Members at a loss for how they can protect themselves.

30. Time is of the essence when highly sensitive Private Information is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired Private

---

[2] Lawrence Abrams, *ShinyHunters behind Salesforce data theft attacks at Qantas, Medtronic Life, and LVMH*, Bleeping Computer (July 30, 2025), https://www.bleepingcomputer.com/news/security/shinyhunters-behind-salesforce-data-theft-attacks-at-qantas-Medtronic-life-and-lvmh/ (last accessed May 5, 2026)

Information of Plaintiff and Class Members is in the hands of nefarious actors and there is no assurance that it will be removed from those actors' possession.

31.     Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their Private Information, especially their Social Security numbers and likely sensitive medical information, onto the Dark Web. Plaintiff and Class Members face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals.

32.     Medtronic largely put the burden on Plaintiff and Class Members to take measures to protect themselves from identity theft and fraud.

33.     Medtronic has not disclosed any plans to offer credit monitoring services. Such measures are significant to protect Plaintiff and Class Members from the lifetime risks they each now face. As another element of damages, Plaintiff and Class Members seek a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes.

34.     Medtronic could have prevented the Data Breach by employing adequate cybersecurity safeguards to protect Plaintiff's and Class Members' Private Information.

35.     Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

8

36.     Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.6% of U.S.-based workers are compensated on an hourly basis, while the other 44.4% are salaried.[3]

37.     According to the American Time Use Survey, American adults have between 4 to 6 hours of "leisure time" outside of work per day;[4] examples of leisure time include partaking in sports, exercise and recreation; socializing and communicating; watching TV; reading; thinking/relaxing; playing games and computer use for leisure; and other leisure activities.[5] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

38.     Plaintiff and Class Members are deprived of the choice as to how to spend their valuable free hours and therefore seek renumeration for the loss of valuable time as another element of damages.

---

[3] *Characteristics of minimum wage workers, 2022*, U.S. Bureau of Labor Statistics (Aug. 2023), https://www.bls.gov/opub/reports/minimum-wage/2022/home.htm (last accessed on May 8, 2026).

[4] *Americans have no idea how to use their free time*, Business Insider (Mar. 26, 2024), https://www.businessinsider.com/americans-free-time-leisure-dont-use-television-2024-3 (last accessed on May 8, 2026).

[5] *Table 11A. Time spent in leisure and sports activities for the civilian population by selected characteristics, averages per day, 2022 annual averages*, U.S. Bureau of Labor Statistics (June 22, 2023), https://www.bls.gov/news.release/atus.t11A.htm (last accessed on May 8, 2026).

*The Value of PII*

39.     In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[6]

40.     In October 2023, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "malicious actors have adjusted their ransomware tactics to be more destructive and impactful and have also exfiltrated victim data and pressured victims to pay by threatening to release the stolen data."[7]

41.     Stolen Private Information is often trafficked on the dark web. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

42.     Malicious actors can use stolen personal information to, *inter alia*, create synthetic identities (which are harder for authorities to detect), execute credible phishing

---

[6]     https://www.zdnet.com/article/ransomeware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited May 8, 2026).

[7] *See StopRansomware Guide*, U.S. Cybersec. and Infrastructure Sec. Agency (Oct. 2023), https://www.cisa.gov/sites/default/files/2023-10/StopRansomware-Guide-508C-v3_1.pdf.

10

attacks, and sell the personal information on underground markets in the dark web.[8]

43.    Another example is when the U.S. Department of Justice announced its seizure of RaidForums in 2022. RaidForums was an online marketplace popular for cybercriminals to purchase and sell hacked data belonging to millions of individuals around the world.[9] "One of the key challenges of protecting PII online is its pervasiveness. As data breaches in the news continue to show, PII about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[10]

44.    The Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. According to Prey, a company that develops device tracking and recovery software, stolen Private Information and can be worth up to $2,000.00 depending on the type of information obtained.[11]

---

[8] *What Data Do Cybercriminals Steal? (How To Protect Yours)*, Identity Guard (Feb. 14, 2024), https://www.identityguard.com/news/what-information-do-cyber-criminals-steal.

[9] *United States Leads Seizure of One of the World's Largest Hacker Forums and Arrests Administrator*, U.S. Dept. of Justice (Apr. 12, 2022), https://www.justice.gov/opa/pr/united-states-leads-seizure-one-world-s-largest-hacker-forums-and-arrests-administrator.

[10] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.

[11] Juan Hernandez, *The Lifecycle of Stolen Credentials on the Dark Web*, Prey (Feb. 26, 2024), https://preyproject.com/blog/lifecycle-stolen-credentials-dark-web.

45.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. Such fraudulent uses include opening fraudulent credit cards and bank accounts, filing or collecting tax returns, accessing government benefits, applying for loans, and receiving healthcare. "If not spotted and resolved, these types of identity theft can rack up financial debt and do extensive damage to a person's credit, making things like obtaining a loan to buy a car or house difficult or even impossible."[12]

46.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

47.     Even then, a new Social Security number may not be effective. "When issuing a new SSN, the Social Security Administration (SSA) links your old number to your new one so you'll still be associated with all wages earned."[13]

48.     Because of this, the Private Information compromised in the Data Breach

---

[12] *What to do if someone has your Social Security number*, AllState (Jan. 24, 2024), https://www.allstateidentityprotection.com/content-hub/stolen-social-security-number.

[13] *What Happens if I Change My Social Security Number*, LendingTree (Mar. 15, 2023), https://www.lendingtree.com/credit-repair/credit-score-after-getting-a-new-social-security-number/.

here is significantly more harmful to lose than other types of data because the information compromised in this Data Breach is difficult, if not impossible, to change.

49.     The Private Information compromised in the Data Breach also demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[14]

50.     Once Private Information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional Private Information being harvested from the victim, as well as Private Information from family, friends and colleagues of the original victim.

51.     According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $12.5 billion in losses to individuals and business victims.[15]

---

[14] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for- 10x- price-of-stolen-credit-card-numbers.html (last visited May 8, 2026).

[15] *2023 Internet Crime Report*, Fed. Bureau of Investig. (2023), https://www.ic3.gov/Media/PDF/AnnualReport/2023_IC3Report.pdf (last accessed May 8, 2026).

52.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

53.     Data breaches facilitate identity theft as hackers obtain consumers' Private Information and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' Private Information to others who do the same.

54.     For example, the United States Government Accountability Office noted in a June 2007 report on data breaches (the "GAO Report") that criminals use Private Information to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[16] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[17]

55.     The exposure of Plaintiff's and Class Members' Private Information to cybercriminals will continue to cause substantial risk of future harm (including identity

---

[16] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), https://www.gao.gov/assets/gao- 07-737.pdf (last visited May 8, 2026).

[17] *Id*.

14

theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off this highly sensitive information.

56. Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised.

57. Medtronic failed to properly train its employees as to cybersecurity best practices and to maintain proper staffing and processes for responding to and preventing network intrusions.

58. Medtronic failed to implement sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

59. Medtronic failed to encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity to identify possible threats.

60. Medtronic failed to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

61. Medtronic failed to timely and accurately disclose that Plaintiff's and Class Members' Personal Information had been improperly acquired or accessed.

62. Medtronic knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured Private Information.

***Defendant Failed to Comply with FTC Guidelines***

63.     The Federal Trade Commission ("FTC") has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

64.     Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[19]

65.     The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

66.     The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods

---

[18] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.

[19] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 8, 2026).

for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[20]

67. The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

68. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

69. Plaintiff and Class Members gave their Private Information to Defendant with reasonable expectation and understanding that Defendant would comply with its duty to keep such information confidential and secure from unauthorized access.

70. Defendant has been on notice for years that Plaintiff's and Class Members' Private Information was a target for bad actors because of, among other motives, the high value of the Private Information created, collected, and maintained by Defendant.

71. Despite such awareness, Defendant failed to impose and maintain reasonable and appropriate data security controls to protect Plaintiff's and Class

---

[20] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.

Members' Private Information from unauthorized access that Defendant should have anticipated and guarded against.

72. Defendant was fully aware of its obligation to protect the Private Information of its customers because of its collection, storage, and maintenance of Private Information. Defendant was also aware of the significant consequences that would ensue if it failed to do so because Defendant collected, stored, and maintained sensitive private information from millions of individuals and knew that this information, if hacked, would result in injury to Plaintiff and Class Members.

73. Despite understanding the consequences of insufficient data security, Defendant failed to adequately protect Plaintiff's and Class Members' Private Information, permitting bad actors to access and misuse it.

***Defendant Failed to Follow Industry Standards***

74. Despite its alleged commitments to securing sensitive data, Medtronic does not follow industry standard practices in securing Private Information.

75. Several best practices have been identified that at a minimum should be implemented by entities like Defendant, including but not limited to, educating all employees on the risks of cyber attacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; limitations on the amount of data that can be exfiltrated from a network; and limiting which employees can access sensitive data.

18

76. Other best cybersecurity practices that are standard in the medical industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

77. Upon information and belief, Medtronic failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

78. Such frameworks are the existing and applicable industry standards in the medical industry. And Medtronic failed to comply with these accepted standards, thus opening the door to criminals and the Data Breach.

***Plaintiff's Experiences and Injuries Caused by the Data Breach***

79. Plaintiff and Class Members are customers of Medtronic.

80. As a prerequisite of being able to obtain or provide medical products and services, Defendant required Plaintiff and Class Members to provide their Private Information.

81.     Medtronic began notifying Plaintiff and Class Members about the Data Breach on or around April 24, 2026.

82.     When Medtronic finally announced the Data Breach, it deliberately underplayed the severity and obfuscated the nature of the Data Breach. Defendant's notices about the Data Breach fail to adequately explain how or when the breach occurred, what exact data elements of each affected individual were compromised, and the extent to which those data elements were compromised.

83.     Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

### A.    Plaintiff Jerome McGrew

84.     Plaintiff Jerome McGrew is an adult individual and a natural person residing in Saint Paul, Minnesota.

85.     Plaintiff Jerome McGrew has been customer of Medtronic who has purchased Medtronic's products and services.

86.     In such a capacity, Plaintiff entrusted his own Private Information to Defendant with the reasonable expectation that Defendant would follow through with its obligations to keep such Private Information confidential and protected from unauthorized access.

87.     Plaintiff is a reasonably cautious person and is therefore careful about sharing his sensitive Private Information. As a result, he has never knowingly transmitted

unencrypted sensitive Personal Information over the internet or any other unsecured source. Plaintiff stores any documents containing his sensitive Personal Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for his various online accounts, changing and refreshing them as needed to ensure his information is as protected as it can be.

88.     Plaintiff only allowed Defendant to maintain, store, and use his Private Information because he believed that Defendant would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information. As a result, Plaintiff's Private Information was within the possession and control of Defendant at the time of the Data Breach.

89.     Plaintiff has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendant. This information has inherent value that Plaintiff was deprived of when his Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals, and, upon information and belief, later placed for sale on the dark web.

90.     The Data Breach has also caused Plaintiff to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

91.     As a result of the actual harm he has suffered and the increased imminent risk of future harm, Plaintiff has spent time since the Data Breach combing through his

financial records, billing statements, and credit history to stay vigilant against potential fraud or identity theft. This time, which has been lost forever and cannot be recaptured, was spent at Defendant's direction.

92.     The substantial risk of imminent harm and loss of privacy has caused Plaintiff to suffer stress, fear, and anxiety. Plaintiff has a continuing interest in ensuring that Plaintiff's Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Class Face Significant Risk of Present and Continuing Identity Theft***

93.     Plaintiff and Class Members suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

94.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's Private Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

95.     In 2021, 32% of persons aged 16 or older who received breach notification were victims of multiple types of identity theft.[21]

96.     As a result of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and Class Members suffered and will continue to suffer damages,

---

[21] Erika Harrell, PhD, *Data Breach Notifications and Identity Theft, 2021*, U.S. Bureau of Justice Statistics (Jan. 2024), https://bjs.ojp.gov/data-breach-notifications-and-identity-theft-2021. (last accessed on May 8, 2026).

including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.  The loss of the opportunity to control how their Private Information is used;

b.  The diminution in value of their Private Information;

c.  The compromise and continuing publication of their Private Information;

d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.  Delay in receipt of tax refund monies;

g.  Unauthorized use of stolen Private Information; and

h.  The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in their possession.

97.     The value of Plaintiff's and the Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

98.     It can take victims years to spot or identify theft, giving criminals plenty of time to milk that information for cash.

99.     One such example of criminals using Private Information for profit is the development of "Fullz" packages.[22]

100.    Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

---

[22] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SEC. (Sept. 18, 2014), https://krebsonsecurity.com/tag/fullz/ (last accessed on May 8, 2026).

101.    The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Personal Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

102.    According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $12.5 billion in losses to individuals and business victims.[23]

103.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

---

[23] *2023 Internet Crime Report*, Fed. Bureau of Investig. (2023), https://www.ic3.gov/Media/PDF/AnnualReport/2023_IC3Report.pdf (last accessed on May 8, 2026).

104.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

105.    The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[24]

106.    The FTC has issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[25] According to the FTC, data security requires: (1) controlling access to data sensibly; (2) requiring secure passwords and authentication; (3) storing sensitive information securely and protecting it during transmission; (4)

---

[24] *Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable*, FED. TRADE COMMISSION (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last accessed on May 8, 2026).

[25] *Start With Security, A Guide for Business*, Fed. Trade Comm'n (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf. (last accessed on May 8, 2026).

segmenting networks and monitoring who is trying to get in and out; (5) securing remote access to networks; (6) applying sound security practices when developing new products; (7) ensuring that third-party service providers implement reasonable security measures; (8) putting in place procedures to keep security current and address potential vulnerabilities; and (9) securing paper, physical media, and devices.[26]

107.    According to the FTC, unauthorized Private Information disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[27] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTCA.

108.    To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure even sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, �𝓟 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008)

---

[26]*Id*.

[27] *See Taking Charge, What to Do If Your Identity is Stolen*, FED. TRADE COMM'N, at 3 (Jan. 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last accessed on May 8, 2026).

("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations. Defendant thus knew or should have known that its data security protocols were inadequate and were likely to result in unauthorized access to and/or theft of Personal Information.

109.    Charged with handling highly sensitive Private Information including medical information, Defendant knew or should have known the importance of safeguarding the Private Information that was entrusted to it. Defendant also knew or should have known of the foreseeable consequences if its data security systems were breached. Defendant nevertheless failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

## CLASS ACTION ALLEGATIONS

110. Plaintiff brings this class action individually and on behalf of all similarly situated persons under Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) of the following Nationwide Class (the "Class"):

> All persons in the United States whose Private Information was accessed in Defendant's Data Breach announced to the public on April 24, 2026.

111. The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

112. Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or their parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

113. Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

114. Plaintiff satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

115. **Numerosity**. Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of the approximately 9 million individuals whose Private Information was compromised by Defendant's Data Breach.

116. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

    b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.     Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.     Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.     Whether Defendant should have discovered the Data Breach earlier;

i.     Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j.     Whether Defendant's delay in informing Plaintiff and Class Members of the Data Breach was unreasonable;

k.     Whether Defendant's conduct was negligent;

l.     Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

m.     Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

n.     Whether Defendant breached implied contracts with Plaintiff and Class Members;

o.     Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

31

p.      Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

q.      Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

117.    **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Moreover, Plaintiff and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

118.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's counsel is competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

119.    **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' data was stored on the same computer system and unlawfully exposed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

120.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class

action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

121. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

122. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

123. Alternatively, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

124. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

125.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

126.    Defendant required Plaintiff and Class Members to provide Defendant with Private Information in order to provide or receive Defendant's products and services.

127.    By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Plaintiff's and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

128.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases of that Private Information.

129.    After all, Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private

Information of Plaintiff and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the Private Information entrusted to it.

130. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

131. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and Class Members, which is recognized by laws and regulations including but not limited to the FTCA, as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

132. Defendant failed to take appropriate measures to protect the Private Information of Plaintiff and the Class. Defendant is morally culpable, given the prominence of security breaches in the medical industry. Any purported safeguards that Defendant had in place were wholly inadequate.

133. Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' Private Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite

known data breaches in the medical industry, and allowing unauthorized access to Plaintiff's and the other Class Members' Private Information.

134. The failure of Defendant to comply with industry and federal regulations evinces Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

135. But for Defendant's wrongful and negligent breach of their duties to Plaintiff and the Class, Private Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the Private Information of Plaintiff and the Class and all resulting damages.

136. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' Private Information. Defendant knew or should have known that their systems and technologies for processing and securing the Private Information of Plaintiff and the Class had security vulnerabilities.

137. As a result of this misconduct by Defendant, the Private Information, and other sensitive information of Plaintiff and the Classes was compromised, placing them at a greater risk of identity theft and their Private Information being disclosed to third parties without the consent of Plaintiff and the Class.

138. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) lost or diminished value of Private

Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information; (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (viii) the present value of ongoing credit monitoring and identity defense services necessitated by Defendant's data breach; (ix) the value of the unauthorized access to their Private Information permitted by Defendant; and (x) any nominal damages that may be awarded.

139. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

140. Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' Private Information in an unsafe and insecure manner.

141. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Nationwide Class)

142. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

143. Defendant had duties arising under the FTCA to protect Plaintiff's and Class Members' Private Information.

144. Defendant breached its duties, pursuant to the FTCA and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (ii) failing to adequately monitor the security of its networks and systems; (iii) allowing unauthorized access to Class Members' Private Information; (iv) failing to detect in a timely manner that Class Members' Private Information had been compromised; (v) failing to remove Private Information it was no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

38

145. Defendant's violation of Section 5 of the FTCA (and similar state statutes) constitutes negligence *per se*.

146. Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTCA was intended to protect.

147. The harm that has occurred is the type of harm FTCA was intended to guard against.

148. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

149. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

150. Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTCA. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

151. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase

in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

152. As a direct and proximate result of Defendant's negligence *per se* Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

153. Finally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

154. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

155. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

156.    Plaintiff and Class Members conferred a benefit on Defendant by entrusting their Private Information to Medtronic from which Medtronic derived profits.

157.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

158.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

159.    Defendant acquired the Private Information through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security.

160.    If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to disclose it to Defendant.

161.    Plaintiff and Class Members have no adequate remedy at law.

162.    As a direct and direct an proximate result of Medtronic's conduct, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual

misuse of their compromised Private Information; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Medtronic's possession and is subject to further unauthorized disclosures or further entrustment to inadequate third party vendors so long as Medtronic fails to undertake appropriate and adequate measures to protect the Private Information; (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (viii) the present value of ongoing credit monitoring and identity defense services necessitated by Medtronic's  data breach; (ix) the value of the unauthorized access to their Private Information permitted by Defendant; and (x) any nominal damages that may be awarded.

163.    Plaintiff and Class Members are entitled to restitution and/or damages from Medtronic and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Medtronic from its wrongful conduct, as well as return of their sensitive Private Information and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

164.    Plaintiff and Class Members may not have an adequate remedy at law against Medtronic, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

165.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

166.    Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of receiving Defendant's products and services.

167.    Plaintiff and Class Members entrusted their Private Information to Defendant. In doing so, Plaintiff and the class entered into implied contracts with Defendant by which it agreed to safeguard and protect such information to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the class if their data had been breached and compromised or stolen.

168.    In entering into the implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

169.    Implicit in the agreement between Plaintiff and Class Members and Defendant was Defendant's obligation to: (a) take reasonable steps to safeguard that Personal Information; (b) prevent unauthorized disclosure of the Private Information; (c) provide Plaintiff and Class Members with prompt and sufficient notice of any and all

unauthorized access and/or theft of their Personal Information; (d) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses; and (e) retain or allow third parties to retain Private Information only under conditions that kept such information secure and confidential.

170.   The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant on the other, is demonstrated by their conduct and course of dealing. Defendant required Plaintiff and Class Members to provide their Private Information as a condition of receiving Defendant's products and services. Plaintiff and Class Members accepted the offers and provided their Private Information.

171.   In accepting the Private Information, Defendant understood and agreed that it was required to reasonably safeguard and otherwise ensure protection of the Private Information from unauthorized access or disclosure.

172.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant that Defendant would keep their Personal Information reasonably secure.

173.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor and ensure that the Private Information entrusted to it would remain protected by reasonable data security measures and remain confidential, either in the hands of Defendant or one of its vendors.

174.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant by providing their Private Information at Defendant's request.

175.    Defendant breached the implied contracts made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the Private Information of Plaintiff and the Class after it was no longer needed, and by failing to provide accurate notice to them that their Private Information was compromised as a result of the Data Breach.

176.    As a direct and proximate result of Defendant's breach of these implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

177.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

178.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data monitoring procedures; (ii) submit to future annual audits of its IT systems and monitoring procedures; (iii) bolster its IT security measures; and (iv) immediately provide or continue providing adequate credit monitoring to all Class Members.

**FIFTH CAUSE OF ACTION**
**Minnesota Deceptive Trade Practices Act ("MDTPA")**
**Violation of Minn. Stat. § 325D.43**
**(On Behalf of Plaintiff and the Nationwide Class)**

179.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the

Complaint as if fully set forth herein.

180. Minnesota affords a cause of action to any person harmed by an entities use of deceptive trade practices. Minn. Stat. § 325D.45, Subd.3.

181. Under MDTPA, a "person engages in a deceptive trade practice when, in the course of business, vocation or occupation, the person . . . engaged in (i) unfair methods of competition, or (ii) unfair or unconscionable acts or practices[.]". Minn. Stat. § 325D.44, subd. 1(13).

182. Defendant engaged in conduct that violated the MDTPA.

183. Specifically, Defendant collected and stored Plaintiffs' and the Class's Private Information. Defendant stored the Private Information in a knowingly unsafe and unsecured manner by, among other things, failing to dispose of data no longer needed for any legitimate business purpose, maintaining the data on an unsecured database in an unencrypted format, failing to adequately monitor activity on the servers containing Plaintiff's and the Class's information, and failing to adequately segment the sensitive data from other parts of Defendant's servers and networks.

184. Similarly, Defendant deployed knowingly unreasonable data security measures that defied expert recommendations, industry standards and statutory requirements for reasonable data security.

185. Defendant's failure to comply with basic data security necessary to protect any stored data, much less the significant and highly sensitive Private Information constitutes immoral, unethical, oppressive, and unscrupulous conduct that caused

46

substantial harm to thousands of people. That is especially true because, despite failing to reasonably protect Plaintiff's and the Class's highly sensitive Private Information, Defendant gained significant profit from that information. While Defendant profited off of Plaintiff's and the Class's data, it failed to take the necessary measures to protect it, leaving Plaintiff and the Class at significant and foreseeable risk of harm.

186.   As a result of those unlawful and unfair business practices, Plaintiff and the Class's highly sensitive Private Information was put at foreseeable risk of unauthorized access, theft and acquisition. That risk materialized with the Data Breach, where hackers obtained and successfully exfiltrated the Private Information of thousands of patients. Subsequently, the stolen information was posted on the dark web, exposing their Private Information and putting them at a substantial risk of misuse of their data.

187.   As a direct and proximate result of Defendant's inadequate security and the resulting Data Breach, Plaintiff suffered significant injuries, including, but not limited to: (1) loss of privacy; (2) misappropriation of his identity, name and likeness; (3) fraud and identity theft from the misuse of his stolen Private Information; (4) diminution in the value of his Private Information due to the loss of security, confidentiality and privacy; (5) lost value of his Private Information; (6) emotional and mental distress and anguish resulting from the access, theft and posting of his Private Information; (7) lost time, effort and expense responding to and preventing the threats and harm posed by the Data Breach; and (8) a continued substantial and imminent risk of the misuse of his Private Information.

47

188.    Plaintiff and the Class also remain at heightened risk of future injury because their information resides with Defendant and, further, because Defendant continues to gather new Private Information on Plaintiff and the Class. Without the use of adequate data security, Plaintiff and the Class remain at a heightened and substantial risk that their Private Information will be subject to another data breach.

189.    Plaintiff and the Class seek all monetary and nonmonetary relief allowed by law, including any: economic damages; damages for emotional and mental anguish; nominal damages; enhanced or treble damages available under the law; court costs; reasonable and necessary attorneys' fees; injunctive relief; and any other relief available by law and to which the court deems proper.

## SIXTH CAUSE OF ACTION
### Minnesota Consumer Fraud Act ("MCFA")
### Violation of Minn. Stat. §§ 325F.68, *et seq.*
### (On Behalf of Plaintiff and the Nationwide Class)

190.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

191.    Defendant is a "person" as defined by Minn. Stat. § 325F.68(3).

192.    Defendant's goods, services, commodities and intangibles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

193.    Defendant engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

194.    Defendant engaged in fraud, false pretense, false promise, misrepresentation, misleading statements and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), including:

48

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and the Class's Private Information, which was a direct and proximate cause of the Data Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Class's Private Information, including duties imposed by the MDTPA and the MCFA, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and the Class's Private Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Class's Private Information, including duties imposed by the MDTPA and the MCFA;

f.  Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the Class's Private Information, or ensure its vendors and business associates reasonably or adequately secured such information; and

g. Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Class's Private Information, including duties imposed by the MDTPA and the MCFA.

195. Defendant's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' Private Information.

196. Defendant intended to mislead Plaintiff and the Class and induce them to rely on its misrepresentations and omissions.

197. Defendant's fraudulent, misleading and deceptive practices affected the public interest, including those affected by the Data Breach.

198. As a direct and proximate result of Defendant's fraudulent, misleading and deceptive practices, Plaintiff and the Class suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; diminution of value of their Private Information; and an increased, imminent risk of fraud and identity theft.

199. Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages; injunctive or other equitable relief; and attorneys' fees, disbursements and costs.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment/Injunctive Relief**
**(On Behalf of Plaintiff and the Nationwide Class)**

200. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 124 of the Complaint as if fully set forth herein.

201. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

202. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate.

203. Defendant's cybersecurity incident demonstrates the need for injunctive relief for Plaintiff and Class Members. Defendant has not implemented measures to protect Private Information, leaving Plaintiff and Class Members without a way of protecting themselves.

204. Plaintiff and Class Members continue to suffer injuries as result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

205. Pursuant to its authority under the Declaratory Judgment Act, this Court

should enter a judgment declaring, among other things, the following: (a) Defendant owes a legal duty to secure Plaintiff's and Class Members' Private Information, and to timely notify impacted individuals of a data breach under the common law, Section 5 of the FTCA, and various state statutes, and (b) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts alleged herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a

comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

v.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi.      requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

vii.      requiring Defendant to conduct regular database scanning and securing checks;

viii.      requiring Defendant to monitor ingress and egress of all network traffic;

ix.      requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

x.      requiring Defendant to implement a system of tests to assess

its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xi.     requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

xii.    requiring Defendant to meaningfully educate all Class Members about the threats that it faces because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

206.   If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at, or implicating, Defendant. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

207.   The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand,

the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

208. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and Class Members whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, on behalf of himself and all others similarly situated, request the following relief:

A. An Order certifying this action as a class action and appointing Plaintiff as the Class Representative;

B. A mandatory injunction directing Defendant to adequately safeguard the Private Information of Plaintiff and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

    i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local

laws;

iii.    requiring Defendant to delete and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

v.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

vii.    requiring Defendant to conduct regular database scanning and securing checks;

viii.    requiring Defendant to monitor ingress and egress of all network traffic;

56

ix. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

x. requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xi. requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

xii. requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C.   A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of Private Information to unauthorized persons;

D.   Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E.   An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

F.   An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.   An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

H.   Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

I.   For all other Orders, findings, and determinations identified and sought in this Complaint; and

J.   Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for any and all issues in this action so triable as of right.

Dated:  May 8, 2026

By:          */s/ Melissa S. Weiner*

MELISSA S. WEINER

Melissa S. Weiner (MN Bar No. 0387900)
mweiner@pwfirm.com
Ryan T. Gott (MN Bar No. 0397978)
rgott@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600

Ryan J. McGee*
rmcgee@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 275-5272
Fax: (813) 222-4736

*Attorneys for Plaintiff and the Proposed Class*

***Pro Hac Vice Forthcoming**